## Snyder, Appellant, *v.* Erwin.

*Will—Probate—Undue influence—Meretricious relation—Evidence.*

1. Where a meretricious relation has been shown to have existed between a testator and the principal beneficiary under his will, and the will diverts the entire estate from the natural objects of the testator's bounty, and gives it over to a married woman with whom adulterous commerce has been carried on, a presumption of fact arises that the will was procured by undue influence.

2. A verdict of a jury against such a will will be sustained where in addition to the meretricious relation, it is shown that the man was seventy-five years of age, that the woman was persistent in following him to his different boarding places, in accompanying him to public places, in showering assiduous attentions upon him in various ways, and in sending him letters addressed in terms of dearest affection, and professing abiding love for him and him alone.

Argued. Oct. 18, 1910. Appeal, No. 25, Oct. T., 1910, by plaintiff, from judgment of C. P. No. 4, Allegheny Co., Second Term, 1909, No. 820, on verdict for defendant in case of Amanda Snyder v. Alice L. Erwin. Before FELL, C. J., MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Issue devisavit vel non. Before SWEARINGEN, P. J.

The facts appear by the opinion of the Supreme Court.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in submitting the case to the jury.

*L. P. Monahan,* with him *John D. Brown,* for appellant, cited: Alexander's Est., 206 Pa. 47; Kane's Est., 206 Pa. 204; Caughey v. Bridenbaugh, 208 Pa. 414; Robinson v. Robinson, 203 Pa. 400; Allshouse v. Kelly, 219 Pa. 652; South Side Trust Co. v. McGrew, 219 Pa. 606.

*R. T. M. McCready,* for appellee, cited: Dean v. Negley, 41 Pa. 312.

OPINION BY MR. JUSTICE STEWART, January 3, 1911:

This was an issue devisavit vel non, in which the jury found against the paper propounded as the last will of Charles S. Jenkins, on the ground that the same had been procured by undue influence. A general reference to the evidence from which the jury derived their conclusion will suffice. Charles S. Jenkins, at the time of the execution of the paper, was a man of about seventy-six years. He was then, and for years had been, a resident of Pittsburg. He was twice married, but had been a widower for some years before his death. His only children were by his first wife, two daughters. One of them died in his lifetime, married, but without issue; the other survives, is married, and is the contestant in this proceeding. Upon the death of his second wife Charles S. Jenkins discontinued his home life and thereafter boarded. He had retired from business about 1901. About 1906 he went to the home of his daughter in Sewickley and resided with her for a year. He then returned to Pittsburg and found a new boarding house. Here he remained the better part of a year, when becoming somewhat enfeebled he was taken by the proponent, Mrs. Amanda Snyder and her husband, to their home in Pittsburg, where he continued to reside until his death June 7, 1908. The estate left is of the value of about $10,000. By the will in issue he gives to his daughter, the contestant, the sum of $5.00, and the entire balance of his estate to Mrs. Amanda Snyder the proponent. The first five assignments of error may be considered together, since they raise but the single question, whether there was sufficient evidence in the case to warrant a finding by the jury of undue influence in the procurement of the will. The verdict of the jury necessarily involves a finding that at the date of the execution of this paper the proponent was sustaining meretricious relations with Charles S. Jenkins. The issue with respect to this matter of fact was too squarely presented to be avoided; and as we read the evidence no different conclusion in regard to it was possible than that

reached by the jury.   The letters written by the proponent to Charles S. Jenkins and introduced in evidence, are so many unequivocal and unmistakable acknowledgments of the relation.   Such of the letters as are admitted to be genuine, as well those which without acknowledging she would not distinctly repudiate, are equally incriminatory with those she disavowed.   The evidence leaves the genuineness of none of them in doubt.   It clearly appears that the unlawful relation thus established began several years before; that it existed at the making of the will, and that it continued thereafter. This fact, taken in connection with the further fact that the will gives the entire estate to the proponent, to the exclusion of an only daughter against whom no other grievance existed than that she had declined to receive into her home the woman she believed to be her father's paramour, was evidence of an undue influence exerted by the proponent affecting the dispositions of the will, and sufficient in itself to carry the case to the jury.   For this we have express authority in Dean v. Negley, 41 Pa. 312, a case more closely resembling this in its facts than any to be found in our books.   It is a mistake to suppose that the rule in that case has ever been departed from.   Allshouse v. Kelly, 219 Pa. 652, and Chidester's Est., 227 Pa. 560, cited by appellant's counsel, are so wholly unlike the present case on the facts, that they are wholly inapplicable here, and nothing can be found in either of them that in any way conflicts with the earlier case.   Dean v. Negley announces no general rule applicable in all cases where a meretricious relation has been shown, but it does decide that when that meretricious relation has been shown, and the will diverts the entire estate from the natural objects of the testator's bounty and gives it over to a married woman with whom adulterous commerce has been carried on, a presumption of fact arises, viz., that the will was procured by undue influence.   And these were exactly the facts in this case.   If there were nothing more in the evidence than what we have referred to, the

case would have been for the jury, and we would be without disposition to disturb their verdict. But there was far more. There was evidence from which the jury might have found that proponent was present at the execution of the will; it clearly appeared that she was persistent in following this old man to his different boarding places, and in accompanying him to public places daytime and night; and that she was most assiduous in showering her attentions upon him in various ways, all so unbecoming in one who was the wife of another, as to suggest, now that the disposition of the estate is made known, a purpose that had relation to the framing of it. Then too in this connection, the letters offered in evidence, are of like significance. When a woman, the wife of a second husband and a grandmother, writes to a man of seventy-five years without family, with ample property, with whom she is carrying on adulterous commerce, and addresses him in terms of dearest affection, protesting abiding love for him and him alone, it is no strained inference that the actuating motive in her case is some other than the passion so ardently expressed. When the party so addressed, in full assurance of the sincerity of the protestations, replies in equally ardent terms, it is some evidence at least that the process of mental decay in his case had not simply begun, but had so far progressed as to render him pliable in the hands of a designing woman to such extent that he could readily be persuaded to accept her will for his own. There is abundant evidence in the case from which the jury could derive the weakened condition of mind in the one and the mercenary purpose in the other; and the case abounds in circumstances all tending to show that advantage was taken of the opportunity thus afforded. These circumstances do not call for further or fuller recital. It is only necessary to add that the case was submitted to the jury in a most clear and impartial charge, in which both the law and the evidence were fully and correctly stated. We have already said that the letters of the proponent were properly in

evidence. The witness who testified as an expert to their genuineness had sufficient qualifications.

The assignments of error are overruled and the judgment is affirmed.