## No. 13,512.

### Lamborn v. Kirkpatrick.
(50 P. [2d] 542)

Decided October 7, 1935.

Mr. Foster Cline, Mr. George A. Trout, for plaintiff in error.

Mr. William F. Robinson, Jr., Messrs. Davis & Wallbank, Miss Clare G. Davis, for defendant in error.

*En Banc.*

Mr. Justice Bouck delivered the opinion of the court.

This is a proceeding to review and reverse the judgment of the district court of Jefferson county denying probate of an alleged will.

Samuel Braden, a childless widower of sixty years of age, died November 11, 1932. A week later the will in question, purporting to be Braden's last will and testament, was presented for probate by Mrs. Lamborn, plaintiff in error, who, though not related to Braden by blood or marriage, was named in the instrument as beneficiary of the better half of the entire estate. Objections were duly filed by Mrs. Kirkpatrick, a sister of the testator, alleging that Mrs. Lamborn had used undue influence to bring about the execution of the instrument.

The case had been appealed to the district court from the county court, where a jury verdict and the resulting judgment had been against the proponent.

In the district court a jury verdict and a judgment thereon were likewise adverse to Mrs. Lamborn, declaring that the instrument was not the will of Braden.

The evidence in the district court, as preserved in

the record before us, was conflicting. There was substantial evidence, pro and con, on the issue of undue influence. Unless a case falls within a valid exception to the general rule, the appellate court must accept the conclusions of the jury as represented by its verdict, provided the lower court did not commit some error prejudicial to the party complaining, in ruling on the law, whether by improperly admitting or rejecting evidence, or by erroneously giving or refusing instructions, or otherwise.

The contentions in reference to the alleged errors here complained of will be better understood if we briefly state the particular situation developed in the lower court.

Mrs. Lamborn sat at the bedside of Braden twelve days before his death and wrote the alleged will with her own hand. Mrs. Kirkpatrick, in order to support her claim of undue influence, introduced evidence tending to show that Mrs. Lamborn was the testator's mistress at the time the alleged will was signed. There was also evidence to the contrary. There was likewise conflicting evidence on the question of Braden's physical and mental capacity at the time of signing the instrument, and as to the general conduct and attitude of Braden and Mrs. Lamborn toward each other.

Such, in part, was the trend of the evidence.

The errors assigned include the contentions: (1) That the trial court was wrong in permitting counsel to cross-examine Mrs. Lamborn about the amount of previous litigation she had had and the employment of numerous attorneys in this connection; (2) that evidence concerning Mrs. Lamborn's general reputation for morality was permitted to be given by several witnesses; (3) that one Tipton, a nephew of Braden, was permitted to testify, the point being made that Mrs. Lamborn was suing as the personal representative of Braden's estate and Tipton was not a competent witness because interested as a legatee named in the will; (4) that certain specified instructions given to the jury are wrong.

424

■ 1. The evidence concerning Mrs. Lamborn's previous litigation and attorneys was offered for the sole purpose of its bearing on the claim that she had thereby acquired a knowledge of legal phraseology; and, on the other hand, the contestant also adduced evidence tending to establish Braden's own unfamiliarity with such phraseology. The instrument having been penned by Mrs. Lamborn, who was as aforesaid the proponent and the chief beneficiary thereunder, a wide latitude was properly allowed in the respects mentioned. The court correctly ruled that the contestant could not go into details of the litigation, and by limiting the effect of the evidence as stated it prevented any possible prejudice.

■ 2. No objection or exception was saved in connection with the admission of the character testimony, nor is this referred to in the motion for a new trial. Mrs. Lamborn is therefore held to have waived her right to object thereto.

■ 3. Tipton is a nephew of the testator. He was "cut off" with a legacy of one dollar. Counsel insist that the testimony of Tipton was therefore barred under section 6556, C. L. 1921. The assignment based upon the witness Tipton's alleged disqualifying interest might well be overruled, like the preceding contention, because the objection is not properly preserved or even mentioned in the motion for a new trial. But suppose the contention were squarely before us. This dollar bequest could not reasonably be considered as conferring a material interest upon Tipton. On the contrary, such action by a testator is fairly interpreted as a practical method of indicating that he does not wish the nominal beneficiary to get any appreciable benefit whatever from the estate. Moreover, the record reveals that Mrs. Lamborn does not sue here as executrix or administratrix, but sues solely as the personally interested proponent of an instrument the very existence of which as a will is in issue. Being only such interested party, she in no manner represents the

estate. We cannot say there was error in receiving the Tipton testimony.

4. The proponent complained of four particular instructions given to the jury, but the argument narrows down to No. 15, which is as follows:

"The court instructs the jury that if they believe from the evidence that the testator and Rena Lamborn, before and at the time the will was made, were living in unlawful cohabitation, then the burden is upon her to show that such relationship between her and the deceased was not used to influence the deceased in making the alleged will."

In this connection we mention, by way of preliminary explanation, that the court gave 23 instructions in all. We have examined each of them, and find that they deal fully and fairly with the legal phases of the case, amply safeguarding the proponent. They expressly and carefully declare, for example, the right of a widower to will away his property as he sees fit, regardless of what might even appear to be unwisdom or folly on his part. Furthermore, they acquaint the jury with the fact that a will cannot be set aside merely because of such influence as is acquired over a testator by kind offices unconnected with fraud but arising out of his affection, his gratitude for past kindnesses, or his esteem for the beneficiary accused of undue influence. The instructions clearly place upon the contestant the burden of proving undue influence by a preponderance of the evidence to the extent of depriving the testator of his free agency and destroying the freedom of his will.

Instruction No. 15 quoted above is challenged by the proponent as not stating the law applicable to testamentary gifts. In *Taylor v. Taylor,* 79 Colo. 487, 247 Pac. 174, this court had before it not a will, but a deed alleged to have been executed in favor of the grantor's mistress. We there affirmed the judgment canceling the instrument on the ground of undue influence. Mr. Justice Denison, who handed down the opinion on behalf of a unanimous

court, said (at page 490 [Pac. page 176]) : "We are all of the opinion that the mistress of a grantor has the burden of proving that a conveyance to her was uninfluenced by that relationship. This she has not done, but the contrary has been rightly concluded from the evidence." In so holding, we thus deliberately chose one of two distinct lines of authority, and the question now is whether the same principle applies in cases of wills. It is argued that such a rule does not so apply. It is true that some courts, when considering instances of alleged undue influence, draw a distinction between transactions inter vivos and testamentary dispositions. There seems to us no sound reason for holding one way as to the former and another way as to the latter. We deem it proper to attach to illicit cohabitation the same effect where undue influence is charged to have brought about the execution of a will as where a case involves the execution of a deed. The moral basis for requiring an affirmative showing against the existence of undue influence from one who is shown to be guilty of illicit cohabitation is as strong in one case as in the other. The unlawful intimacy of this meretricious relation between a testator and a beneficiary who is not related to him by blood or marriage usually assumes a clandestine form and, after the testator's death, would almost invariably render such undue influence as results therefrom incapable of proof except by the aid of the presumption which the instruction in question undertakes to recognize. In our opinion, the instruction, fully supplemented as it was, is a correct statement of the law in Colorado. Compare *Snyder v. Erwin,* 229 Pa. 644, 79 Atl. 124.

For the reasons above stated, the judgment of the district court must be affirmed.

Judgment affirmed.

MR. JUSTICE HOLLAND and MR. JUSTICE YOUNG dissent.