In the Matter of the ESTATE OF Jake SCHLAGEL, Jr., Deceased.

Kayla Thacker and Cassandra Thacker, Interested Persons–Appellants,

v.

Martha J. Teegarden, as personal representative of the estate of Jake Schlagel, Jr., and individually, Appellee.

No. 01CA2545.

Colorado Court of Appeals, Div. I.

March 13, 2003.

Rehearing Denied April 10, 2003.

Certiorari Denied May 10, 2004.

The Law Office of James D. Thorburn, James D. Thorburn, Richard A. Walker, Elizabeth, Colorado, for Interested Persons–Appellants.

Wade, Ash, Woods, Hill & Farley, P.C., Herbert E. Tucker, David M. Swank, Denver, Colorado, for Appellee Martha J. Teegarden as personal representative of the estate of Jake Schlagel, Jr.

Godfrey & Lapuyade, P.C., Gregory B. Washington, Englewood, Colorado, for Appellee Martha J. Teegarden, individually.

Opinion by Judge GRAHAM.

Kayla and Cassandra Thacker appeal the trial court's order upholding the appointment of Martha J. Teegarden as personal representative of the estate of Jake Schlagel, Jr. and denying recovery of probate assets. We affirm.

Schlagel was married to Ethel Schlagel. Both are now deceased. They had three children, and the Thackers are their grandchildren.

When Mrs. Schlagel's health declined, Schlagel was no longer able to care for her without outside assistance. Teegarden was hired as a caregiver in 1994. A few months later, Mrs. Schlagel was placed in a nursing home, but Teegarden continued to live in the Schlagel home and to care for Mrs. Schlagel during her frequent visits to the nursing home.

At that time, the Schlagel children began to question the relationship between Schlagel and Teegarden, which by late 1996 had become intimate and romantic, and family relationships became strained. Thereafter, Schlagel determined to disinherit his children. He purchased real estate and recorded it in Teegarden's name alone or in joint tenancy. These actions were taken after Schlagel consulted with counsel.

In 1998, two of the Schlagel children filed a copetition for conservatorship of Mrs. Schlagel, who was suffering from Pick's disease, a condition similar to Alzheimer's disease. Schlagel and his children resolved the petition with a stipulation, which appointed the children as coguardians and Schlagel as conservator and required him to continue to provide financially for Mrs. Schlagel and to account for such finances. This litigation exacerbated the strained relationship between Schlagel and his children.

Schlagel subsequently revised his will to provide for a life interest for Mrs. Schlagel, with any remainder to their grandchildren. He left the balance of his estate to Teegarden, or, if she did not survive him, equally to his living grandchildren.

In 1999, Teegarden quitclaimed to Schlagel her entire interest in the property he had purchased for her.

Schlagel died in August 1999, and Mrs. Schlagel died in October 1999.

In 2001, the Thackers filed a petition for recovery of probate assets and an assessment of a surcharge against Teegarden for breach of fiduciary duty. After an evidentiary hearing, the trial court denied the petition, finding no breach of fiduciary duty or undue influence by Teegarden and ruling that Teegarden should remain as personal representative. This appeal followed.

I. Per Se Undue Influence

The Thackers argue that the trial court failed to consider Teegarden's undue influence on Schlagel resulting from their illicit relationship. Specifically, the Thackers argue that Teegarden should not be permitted to benefit from her adulterous relationship with Schlagel and that in denying their petition, the court ignored the principles espoused in *Taylor v. Taylor*, 79 Colo. 487, 247 P. 174 (1926), and *Lamborn v. Kirkpatrick*, 97 Colo. 421, 50 P.2d 542 (1935). The effect of these decisions, according to the Thackers, is to disqualify conveyances to beneficiaries who are engaged in an illicit relationship with the grantor. We disagree.

Schlagel and Teegarden's intimate relationship is not disputed. Under the holdings of *Taylor* and *Lamborn*, however, neither that relationship nor the fact that it arguably violated laws prohibiting adultery or bigamy automatically voids the conveyances Schlagel made to Teegarden. Those cases are distinguishable on their facts.

*Taylor* involved a deed of real property to a married woman who acquired influence over Taylor during a "meretricious" relationship. The court held that the relationship "requires the conclusion that at least part of her influence over him was due to that relation." According to the court, "We are all of the opinion that the mistress of a grantor has the burden of proving that a conveyance to her was uninfluenced by that relationship." In *Taylor*, the mistress had not met that burden, "but the contrary ha[d] been rightly concluded from the evidence." *Taylor v. Taylor, supra*, 79 Colo. at 490, 247 P. at 176.

In *Lamborn*, the testator's mistress penned the will while present at his deathbed. The court "deem[ed] it proper to attach to illicit cohabitation the same effect where undue influence is charged to have brought about the execution of a will as where a case involves the execution of a deed." *Lamborn v. Kirkpatrick, supra*, 97 Colo. at 426, 50 P.2d at 544.

We do not read either *Taylor* or *Lamborn* to stand for the principle that conveyances to mistresses are per se void or voidable as a matter of law or that any conveyance must be proved to have been wholly uninfluenced by the parties' relationship. Instead, we read those decisions to say that, in light of the facts presented there, a presumption of undue influence arose.

Even though Schlagel and Teegarden were in an intimate relationship, it does not automatically follow, as the Thackers suggest, that as a matter of law the conveyances and devise to Teegarden were the product of undue influence. *Taylor* and *Lamborn* required the beneficiaries to meet the burden of going forward with evidence to establish that the transfers or the devises were fairly received. We therefore conclude that, at most, even in light of Schlagel and Teegarden's relationship, Teegarden is not automatically disqualified as a beneficiary of Schlagel's estate or as a transferee of real property.

## II. Rebuttable Presumption

■ We also conclude that, to the extent a presumption of undue influence arose, it was rebutted. Thus, we reject the Thackers assertion that the trial court erred in holding that the logic of *Taylor* and *Lamborn* was "archaic" and in failing to place a burden on Teegarden to disprove that the nature of her relationship with Schlagel established undue influence.

The trial court indeed characterized the logic employed by *Taylor* and *Lamborn* as "archaic." However, we do not perceive that in making that comment, the trial court ignored those decisions. In fact, the trial court "carefully considered the effect" of those cases in reaching its conclusion that Teegarden carried her burden. In contrasting the principles of *Taylor* and *Lamborn* with the law that has evolved since, the trial court referred to CJI–Civ. 4th 34:14 (1998), the instruction on presumption of undue influence when a beneficiary is in a confidential or fiduciary relationship. The notes to that instruction state, in relevant part:

> Under the language in several older cases, the presumption of undue influence created by the active participation of a beneficiary in the preparation or execution of a will not only shifted the burden of going forward to the proponent, but also shifted the burden of proof to the proponent to disprove undue influence by establishing the "transaction was in fact fair, just and reasonable."
>
> Consistently, however, with CRE 301 ... the provisions of the Probate Code now clearly establish that the presumption only shifts to the proponent the burden of coming forward with rebutting evidence. The presumption *does not* shift to the proponent the "ultimate" burden of disproving undue influence.

CJI–Civ. 4th 34:14 cmts. 3–4 (emphasis added and citations omitted).

Similarly, § 15–12–407, C.R.S.2002, which addresses the burden on will contestants

claiming undue influence, provides, in relevant part: "Contestants of a will have the burden of establishing ... undue influence.... Parties have the ultimate burden of persuasion as to matters with respect to which they have the initial burden of proof."

Here, any presumption of undue influence based upon Teegarden and Schlagel's relationship was rebuttable, and the ultimate burden of persuasion remained with the Thackers. Teegarden presented sufficient evidence to rebut the claim of undue influence.

The trial court concluded, "[T]he parties loved one another and had an intimate relationship. Mr. Schlagel trusted Ms. Teegarden more than his children, his attorney, his account broker, or any other person about whom I heard testimony." Additionally, the trial court concluded Schlagel was "not vulnerable" when he made the transfers to Teegarden, noting, "He was fully able to protect himself and did so." Further, Teegarden "never asked, demanded, or insisted that Mr. Schlagel transfer any property or cash to her." The court found:

> Mr. Schlagel without any undue influence from Ms. Teegarden made all decisions to engage in the transactions and/or transfers to Ms. Teegarden based upon his own counsel. Ms. Teegarden did not play an active and direct role in any of Mr. Schlagel's estate planning or the documents related thereto.

The trial court ultimately concluded "from all the evidence that Ms. Teegarden has overcome that presumption and that there was no undue influence."

A trial court's finding of fact will not be disturbed unless it is so clearly erroneous as to find no support in the record. *Peterson v. Ground Water Commission*, 195 Colo. 508, 579 P.2d 629 (1978). A finding is also clearly erroneous when the court, on reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *See Quintana v. City of Westminster*, 56 P.3d 1193 (Colo.App.2002).

We are satisfied that there is ample support for the trial court's findings, and we will not disturb them on review. The record also refutes the suggestion that the court ignored the principles of *Taylor* and *Lamborn*. To the extent those principles continue to have vitality in light of § 15–12–407, the trial court correctly held that the presumption was rebutted.

Finally, although we reject the Thackers' public policy argument that, by allowing Teegarden "to keep the spoils of the illegal relationship, the Courts will effectively" give "aid to an enemy of society," we decline Teegarden's request to award sanctions in accordance with C.A.R. 38(d).

The order is affirmed.

Judge JONES and Judge VOGT concur.