ESTATE OF BLIED: BLIED and another, Appellants, vs. BLIED and others, Respondents.

*January 10—February 5, 1952.*

*Hugh F. Oldenburg* of Madison, for the appellants.

For the respondent executors there was a brief by *Schubring, Ryan, Petersen & Sutherland* of Madison, and oral argument by *William Ryan.*

*Toebaas, Hart, Kraege & Jackman* of Madison, for the respondents Mrs. Ferdinand G. Speth and Mrs. William E. Walker.

Brown, J.    Frank C. Blied was an elderly gentleman who in his last years frequently revised his will. On April 20, 1946, he executed a will which contained a bequest of $500 to each of the petitioners. There was a codicil to this will, dated September 20, 1948, which did not affect these legacies, and a second codicil, November 17, 1948, which revoked them because Mr. Blied had made the gifts *inter vivos*. On December 1, 1948, he executed a new will in which he made no provision for the petitioners. On December 31, 1948, he made another which contained legacies of $5,000 to each petitioner and divided the residue of the estate among his four living children, one fifth to each, and the remaining fifth equally between the two petitioners. On September 15, 1949, Mr. Blied executed the will now attacked. This made no provision for the petitioners. On September 27, 1949, he made a codicil by which his sons were named executors instead of the corporation previously named, and legacies of $200 apiece to his great-grandchildren as a class (there were twenty-three of them) were revoked. Mr. Blied died February 1, 1951, at the age of eighty-six. If he had died intestate his heirs at law would have been his widow, his four living children, and the petitioners who are the children of Mr. Blied's deceased son, Gregory.

The will of September 15, 1949, and its codicil were offered for probate and notice in the usual form was published, and was served personally on each petitioner, that on March 6, 1951, the county court would hear and consider the application for probate. The petitioner, Gregory Blied, Jr., asked his uncles, Leo and Ray Blied, if it was necessary for him to attend the hearing. They told him it was not. At the time of asking he knew he was not a beneficiary under the will. He did not say to either uncle that he had any intent or desire to contest it. · He did not attend the hearing.

The other petitioner, Mrs. Miller, called Mr. Ryan on the telephone. He is the attorney who drafted the codicil, and the proponents of the will had retained him to conduct the probate proceedings. Mrs. Miller asked him if it was necessary for her to attend the hearing. She knew that she was not a beneficiary and she did not tell Mr. Ryan that she objected to the will. He told her that her attendance was not necessary and she did not attend. On March 6, 1951, the day set for hearing, the will was proved, apparently without opposition, and the county court admitted it to probate.

About March 19, 1951, Gregory Blied, Jr., and Mrs. Miller retained counsel and on March 31, 1951, joined in a petition to the county court. This stated that the petitioners had been misled by Leo Blied, Ray Blied, and Mr. Ryan and, therefore, had not made timely objection to the admission to probate of the will and codicil, and that they are advised and do believe that at the time of the execution of the instruments Mr. Blied was under undue influence and also lacked testamentary capacity; and they are informed and believe that they were omitted from the will and codicil by mistake and accident and not intentionally. Petitioners then asked for an order requiring all interested persons to show cause why the admission of the will and codicil to probate should not be revoked or, in the alternative, why the petitioners should not take the shares of the estate which they would have had if their grandfather had died intestate. The county court issued the desired order to show cause and on May 7, 1951, the matter came on for hearing. Testimony was taken, counsel heard, and the county court dismissed the petition on the merits. Petitioners have appealed. The relief they ask is that the will be set aside or, alternatively, the cause be remanded for further hearing as to whether they were omitted from the will by mistake or accidentally.

At the hearing of the order to show cause petitioners could and did inquire extensively into all considerations affecting the preparation and execution of the will. At that time it was both their opportunity and duty to produce all their evidence in support of the allegations of their petition. We suppose they did so; at any rate there is nothing to suggest that other evidence exists or is obtainable. Upon the evidence that was produced, it appears without contradiction that Mr. Blied had some telephone conferences with Attorney Spohn concerning a revision of his will and also asked his son-in-law, Mr. Walker, to arrange an appointment with Mr. Spohn for that purpose. Mr. Walker made the appointment and on the day set, August 19, 1949, Mr. Blied requested his son, Leo, his bookkeeper, Fisher, and his son-in-law, Walker, to go with him. Mr. Spohn asked Mr. Blied questions which he thought material and then invited suggestions from the others on matters which might have been overlooked. The will, as tentatively set up, left nothing to the two petitioners and a bequest to the family of the deceased son, Gregory, was suggested, probably by Mr. Walker. Mr. Spohn, Mr. Leo Blied, and Mr. Walker agree in their testimony that Mr. Frank Blied was then asked directly whether he did not want to include Gregory's children or widow in his bequests, to which Mr. Blied replied that he did not, for he had treated Gregory's family fairly at the time of the latter's death and the petitioners should not now be treated differently from the other grandchildren,—who took nothing. Mr. Fisher did not recollect any such conversation. He did not deny it took place and he said he paid slight attention to the discussion, considering it none of his business. The trial court made oral findings from the bench which were transcribed. On this phase the court said: "From the testimony herein produced I find nothing to indicate that these grandchildren were omitted by

mistake or accident. On the contrary, I can find that the testator was quite aware of their existence." We consider this to be in accord with the uncontroverted evidence of unimpeached witnesses.

In addition to what has already been set forth, Mr. Walker testified that Mr. Blied frequently talked to him about his wills and asked for suggestions to be incorporated in a revised will, and Mr. Walker made suggestions particularly in reference to inheritance-tax matters. It is in evidence, further, that after the conference in Mr. Spohn's office in which Leo Blied and Mr. Walker participated, Mr. Spohn had several more conferences with Frank C. Blied in which he presented drafts of the will to Mr. Blied for criticism. These took place in Mr. Blied's office and were attended only by Mr. Blied and Mr. Spohn. A draft was finally prepared which satisfied Mr. Blied and the formal will was ready for his signature on September 15, 1949. While Mr. Blied came regularly to his office in the printing business of Blied, Inc., he was failing physically and was not able to walk. He asked Leo and an employee of Blied, Inc., to take him to Mr. Spohn's office, which they did. There, in Leo's presence, Mr. Spohn read the will to Mr. Blied who approved its provisions. Leo then stepped out and Mr. Blied signed the will in the presence of Mr. Spohn and two of Mr. Spohn's partners. Later Mr. Blied had afterthoughts and he had Mr. Ryan prepare the codicil previously mentioned. When this was ready, September 27, 1949, Mr. Ryan took it to Mr. Blied's office and read it to him there. Ray Blied was in the office at the time and heard it read. Mr. Blied signed it and two of the Blied, Inc., clerks acted as witnesses, attesting among other things, to their belief that he was of sound mind and disposing memory. On the question of unsound mind, the learned trial court said, in its oral findings: "None of the testimony here offered would indicate such a possibility

as to condition of testator's mind and memory." This, too, conforms to our views of the evidence.

Remembering that Frank C. Blied was a man accustomed to make wills and to change them readily when they ceased to suit him, it is persuasive against the allegation of undue influence that, on thinking over the Spohn will, he went to Mr. Ryan without any intervention by his sons or son-in-law and procured a codicil revoking substantial bequests to great-grandchildren and making his sons his executors, and leaving the Spohn will otherwise intact.

Respecting undue influence, the trial court, citing *Will of Faulks* (1945), 246 Wis. 319, 17 N. W. (2d) 423, said that an objector to a will must prove four things, which are:

"1. That the person was unquestionably subject to undue influence.

"2. That there was opportunity to exercise such undue influence and effect the wrongful purposes.

"3. That there was a disposition to influence unduly for the purpose of procuring an improper favor.

"4. A result clearly appearing to be the effect of the supposed influence."

Then the court commented: "Nothing that I have here heard suggests the possibility of proving any of these things, except that some inference might have been drawn that there was opportunity to exercise an influence and effect a wrongful purpose." We concur.

The trial court also reached the conclusion that the petitioners had not shown such freedom from fault, that they were entitled under sec. 324.05, Stats., to a reopening of the case and a retrial of the admissibility of this will and codicil, and said:

"From their testimony it is made to appear that even before they had received notice of the application for the probate of the will they knew that they were excluded from

participating in the estate; that not until after its admission to probate did they contemplate filing objections thereto, but were concerned only as to whether they were required to appear in court on the appointed day. In addition, they have made no showing that they now possess any more information concerning either testator's competency or his being subject to undue influence than they had during the interval between receiving notice of the date set for hearing and the admission of the will to probate.

"The conversations which they had with the present executors and their attorney fall short, in my opinion, of making out a case of fraud against any of them."

The petitioners are educated, adult people and the trial court's doubt that they were entitled to the relief granted by sec. 324.05, Stats., appears to be well founded. We have, however, passed this question and have gone directly to the merits because of the allegation of fraud directed against an attorney of this court and the further allegation that the uncles of the petitioners, in addition to inducing the absence of petitioners from the scheduled hearing, exerted undue influence upon the testator to increase their inheritances by sacrificing those of their brother's children which, if true, could hardly have escaped the notice of the attorney who prepared the will. The honor of the persons so accused deserves an examination of the evidence on which the allegations are based and such examination, in our opinion, fails to substantiate the charges. We conclude that the learned county court should, as it did, deny and dismiss the petition on the merits.

*By the Court.*—Order affirmed.