ESTATE OF BEYER: BRAUN and another, Appellants, vs. HANSEN, Respondent.

*October 9—November 5, 1952.*

For the appellants there was a brief by *Haines & Schaller* of Whitewater, and oral argument by *Leonard M. Haines* and *Cyril D. Schaller*.

For the respondent there was a brief by *Albert H. Gill,* and oral argument by *Mr. Gill* and *Mr. Richard B. Eager,* both of Evansville.

FRITZ, C. J.   The testator, Fritz Beyer, died on November 2, 1951. His wife had died several years ago, and his only surviving heirs were his son, Arthur, and his daughters, Martha Braun and Ellen Hansen. The will executed on July 1, 1949, provided:

"I give, devise, and bequeath all my property of whatever nature to my daughter, Ellen Hansen, in fee simple.

"I appoint my daughter, Ellen Hansen, to be the executrix of my estate with the same powers over the property that an owner would have and ask the court to waive bond.

"I do not wish my other two children, Arthur Beyer and Martha Braun, to have any part of my estate so I specifically exclude them from participation in any way."

The testator had owned a farm and his son, Arthur, worked on the farm until he was twenty-one years of age, and he was then paid $300 annually. He married, and in 1939 purchased a half interest in the personal property on the farm, and continued to work under a fifty-fifty arrangement, until the father sold the farm and bought and lived in a residence in Evansville. That was all the property he owned, and he received no income except old-age assistance commencing in September, 1949, through September, 1951; and as the recipient thereof, a claim was filed against his estate by the Rock county welfare department for $2,944.45.

After the testator left the farm, Arthur moved to and operated a farm about one hundred thirty-five miles from Evansville, and he then saw his father about once a year. He testified that his relationship with his father was friendly;

that he never had any conferences with his sister, Ellen Hansen, regarding the execution of his father's will, until April, 1951, when he asked Ellen about the terms of the father's last will; that she first denied that she knew about the existence of such a will, but shortly returned to the room and admitted that she did know, and that it was all left to her. The son testified that was the first time he knew of the execution of the will; that no disputes had arisen between Arthur and his father; but that his relationship with his sister Ellen was not too good.

On cross-examination the son testified that he had asked his father in the hospital about four and one-half months before he died, how he was leaving his property, and his father told him he was leaving it to Ellen and that there would not be much left.

Testator's daughter, Martha Braun, testified she returned to reside with her parents in Evansville about February 9, 1943, prior to the death of her mother, whose physical condition was very poor, and she became an invalid, and died in September of 1943. Martha testified she remained at home caring for her father whose physical condition was pretty fair, but he was seriously handicapped by lack of sight, and he would not have been able to care for himself if he had lived there alone. Martha remained at the home until January 6, 1948. During that period, her sister Ellen rented the upstairs apartment of the house for $12 a month, and resided there. While Martha resided with her father, she managed all of the financial affairs of the household, and the father never participated in financial matters. During that five-year period, the only income which Martha had available for the operation of the house was the $12 per month rent Ellen paid; $3 garage rent; and $65 per month for the care of an elderly man, and another aged patient. It was necessary for Martha to use her own funds and do outside work, such as washing, ironing, and cleaning for

other people in order to have money for her own expenses. The only assistance she received from her sister, Ellen, was to stop in once in a while and assist with the meals when Martha was gone. When the father was in the hospital, Martha saw him quite often, whenever she had time off from her work.

Martha testified she had conferences with her father and Ellen concerning the execution of wills prior to 1948, but did not know of his intention to execute the will of 1949, or the terms thereof prior to their execution; that conversations with Ellen would be quite frequent, and to the effect that she thought Dad should not leave anything to Arthur, because he had received his share by reason of the wages he had been paid; and that it was Ellen's position that she and Martha should receive some compensation for the care of the mother, and that it was necessary for the father to be assisted, because he could not see. Martha left the father's home in January, 1948, because she was not able to care for him any longer. During the last year that she was there, the father requested her to take him to the attorney's office again for the purpose of changing his will, immediately after his return from visits with her sister, Ellen, in the upstairs apartment. After leaving her father, Martha resided in Whitewater and Janesville.

Ellen Hansen testified that while the testator was a patient at the hospital, about four months before his death, he told his son, Arthur, that there would not be much left, and that he was leaving it to Ellen. Likewise, Arthur testified:

"Q. Did you have any conferences in regard to any terms of any will that your father may have made? A. I asked him when in the hospital if he had made a will, and he said, 'Yes, all to Ellen.'"

The will in question was drawn by Walter E. Nitcher, an attorney at law, at Evansville. He testified that it was

executed by the testator on July 1, 1949, either in Nitcher's office, or in the testator's home; that he could not remember which; that he discussed with the testator at length about devising his property and that the testator stated to him the reason for his leaving his property to Ellen, and leaving nothing to the other two children; that Ellen was present a portion of the time.

Appellants objected to the will dated July 1, 1949, on the ground that the execution thereof was procured by undue influence exercised over and upon the testator by Ellen Hansen.

The testimony on the trial duly warranted the court's findings:

"1. That the testator . . . was of sound and disposing memory;" and

"2. That the court failed to find any proof of undue influence exerted either by Ellen Hansen or by any other individual, and so far as any suggestion of influence is concerned, there is nothing in the record outside of the fact, that the will is unusual; this will provides for the one, to the exclusion of two others. That is far short of constituting proof of undue influence."

As stated in *Estate of Blied*, 261 Wis. 32, 37, 51 N. W. (2d) 482, respecting undue influence, an objector to a will must prove four things, which are:

"1. That the person was unquestionably subject to undue influence.

"2. That there was opportunity to exercise such undue influence and effect the wrongful purposes.

"3. That there was a disposition to influence unduly for the purpose of procuring an improper favor.

"4. A result clearly appearing to be the effect of the supposed influence."

In the case at bar, the trial court was duly warranted in finding and concluding that:

". . . the court fails to find any slightest evidence or proof of any undue influence exerted either by Ellen Hansen or by any other individual."

*By the Court.*—Judgment affirmed.