WILL OF LEISCH : HEIM and others, Appellants, vs. THOMAS and others, Respondents.

*April 29—June 2, 1936.*

646

For the appellants there was a brief by *Silverwood & Fontaine* of Green Bay, and oral argument by *A. B. Fontaine*.

*Lloyd B. Bongsto* of Green Bay, for the respondents.

MARTIN, J. The trial court has found that there was an opportunity for undue influence; that there were dispositions on the part of Carl J. Thomas to exercise undue influence; and that the circumstances surrounding the making and execution of the will in question were shrouded in secrecy—circumstances which raised the suspicion of the court. These findings are sustained by the evidence and all of the surrounding circumstances.

The proof of undue influence generally rests in circumstantial evidence. Here, the proof is more direct, definite, and certain. It is difficult to read this evidence and believe that decedent's conduct was not induced, if not directed, by someone. The four elements necessary to be proved in order to establish undue influence are as follows: (1) A person unquestionably subject to undue influence; (2) opportunity to exercise such influence and effect the wrongful purpose; (3) a disposition to influence unduly for the purpose of procuring an improper favor; and (4) a result clearly appearing to be the effect of the supposed influence. *Will of Schaefer,* 207 Wis. 404, 411, 241 N. W. 382; *Will of Grosse,* 208 Wis. 473, 477, 243 N. W. 465; *Will of McLeish,* 209 Wis. 417, 422, 245 N. W. 197. "Disposition," in the sense it is here used, means something more than a mere willingness by one to share to a greater extent than another in the distribution of the testatrix's estate. It implies a willingness on the part of a person to do something wrong or unfair, to bring about a result favorable to himself and unjust to another, and grasping or overreaching characteristics. *Will of Schaefer, supra.*

We have here two of the four elements considered necessary to establish undue influence—the opportunity and the disposition. The trial court further found: "The circumstances surrounding the making and execution of said will were shrouded in secrecy. .' . . Circumstances which raise the suspicion of the court." The evidence clearly establishes to our satisfaction a result indicating an exercise of undue influence. The testatrix, according to all the testimony, was on equal friendly relations with all her nieces and nephews. There is no apparent reason why she should favor the Thomas heirs over the Heim heirs. As indicating her desire to treat her six nieces and nephews alike, we have the testimony of Mrs. Mary Kolb to the effect that Miss Leisch told her shortly before leaving for Milwaukee that the two Thomases wanted her to make a will, but "she wasn't going to make none." Further, that deceased said when she was about to leave, "I suppose they want me to make a will and I won't make no will. . . . If I go there I don't intend to make no will." This testimony is corroborated by that of Catherine Kolb to the effect that Miss Leisch had told her the day before she left for Milwaukee that she would not make a will.

We cannot agree with the finding of the trial court that the will was natural and just in its provisions. While the deceased's estate was appraised at $36,434.35, it appears to have been stipulated at the hearing in the county court that the value of the estate was approximately $30,000. All of this estate excepting $1,700 is given by the purported will to the three Thomas heirs. There is not a word of testimony or a single circumstance to justify the finding that it is a natural and just will. Of course, if deceased possessed sufficient mental capacity and was free of undue influence at the time of making the alleged will, she was at liberty to dispose of her property as she saw fit, but up until the time she entered the Carl Thomas home in Milwaukee it appears to

have been her sincere wish to die intestate, leaving all her nieces and nephews to share alike in whatever estate she might leave. With such clear proof of the disposition to exercise undue influence, the conceded opportunity to exercise it, with a result so plainly manifest, we need only consider the further fact of the susceptibility on the part of the testatrix to undue influence. In *Elliott v. Fisk,* 162 Wis. 249, 253, 155 N. W. 110, the court said:

"While it is true that a testator susceptible to undue influence; an opportunity for the exercise thereof; a disposition to exercise it; and a result indicating its exercise must be established by clear and satisfactory evidence before a court is justified in setting aside a will, yet the clear establishment of three of these essential elements may with slight additional evidence as to the fourth compel the inference of its existence. This is especially true where the will is not what may be termed a natural one, such as relationship usually dictates."

*Will of Walker,* 193 Wis. 264, 270, 213 N. W. 626; *Will of Link,* 202 Wis. 1, 11, 231 N. W. 177.

That Miss Leisch was in a critical physical condition, at the time the will was executed and for a long time prior, is conceded. While there is no medical testimony from doctor or nurse excepting that of her attending physician at Green Bay—Dr. Oliver—who testified he had treated the testatrix for several years prior to October of 1934, and on October 13, 19, and 23, 1934, the several witnesses who testified as to her physical condition said she worried over her condition, suffered intense pain, cried considerably, and was very weak. Carl Thomas testified that when he took her to Milwaukee she was unusually sick; that while she later showed some improvement, the pain she had was increasing. She entered the hospital at Milwaukee on November 24th, underwent an operation on that day, and died on November 29, 1934. A weakness of mind resulting from her physical condition would be quite natural.

Obviously, the trial court erred in concluding that the contestants failed to make a *prima facie* case of undue influence. In its opinion the trial court said:

"The fact of susceptibility to such influence must be left at the end of the trial unquestionably established, and the disposition to exercise such influence must be established by clear and satisfactory evidence."

Both opportunity and disposition were found by the trial court; also that the will was executed under circumstances "shrouded in secrecy—circumstances which raised the suspicion of the court." We have a result here clearly appearing to be the effect of the alleged influence.

Under the decisions of this court in *Will of Poller*, 204 Wis. 127, 131, 235 N. W. 542, and *Will of Bocker*, 167 Wis. 100, 106, 166 N. W. 660, the contestants clearly made a *prima facie* case of undue influence and placed upon Carl Thomas the burden of meeting the evidence produced by them and of showing his entire good faith in the premises. In *Will of Bocker, supra*, the trial court in its decision said:

"That some of the facts essential to void a will for undue influence existed is very plain. The adopted daughter had ample opportunity to exert influence over the deceased, and she had the disposition to use such influence. She also importuned the testatrix to make a will, and the will made was such as the adopted daughter wanted. But does it appear that the deceased was 'unquestionably subject to undue influence,' and how much evidence is there of overt acts of the adopted daughter after the former will was revoked? The deceased was obviously a strong-minded and strong-willed woman and she retained her faculties unimpaired to the last, except as to hearing, and there was no change in that respect for a long period prior to her death. That the adopted daughter importuned her not only to destroy the former but to execute the last will I have no doubt. But that she coerced the will of the old lady, that is, overpowered her will and rendered her incapable of exercising her free will power, I do not feel convinced."

At page 103 this court said:

"From such decision it appears that there was but one element lacking in order to meet the essential requirements to warrant setting aside a will because of undue influence. *Skrinsrud v. Schwenn,* 158 Wis. 142, 147 N. W. 370. Opportunity to influence, disposition to influence, and the coveted result are all present and so found. If the court erred in holding that there was not sufficient in the record to warrant a conclusion, based upon clear and satisfactory evidence, that the result expressed in the will was attained by the coercion, not importunity merely, of Selma, then the will must be set aside. *Elliott v. Fisk,* 162 Wis. 249, 155 N. W. 110."

The physical and mental condition of Mrs. Bocker appears to have been better than the physical and mental condition of Miss Leisch at the time in question. The facts in the instant case against sustaining the will are stronger and more persuasive than are the facts in the *Bocker Case*. At page 106 the court there said:

"We feel that the logic of the situation made it incumbent upon a proponent of a will, situated toward the maker of it as Selma was toward Mrs. Bocker, to meet and overcome the natural and irresistible presumption that arose from this unexplained change in the two documents, when there was such clear proof of the disposition to exercise undue influence, such abundant opportunity to exercise it, and where a so ardently desired result is so plainly manifest."

This court reversed the judgment of the circuit court with directions to enter judgment denying the probate of the will.

The will in form was properly executed, and we do not deem it necessary to consider whether the testatrix's mental condition as it may have been affected by her physical condition was sufficient to defeat the will. We have given full significance to her physical and mental condition in our consideration of the question of whether the will was the

result of undue influence. We are convinced that an impartial weighing of the evidence compels the conclusion that the will of November 21, 1934, was not the will of the testatrix. It is the product of the undue influence to which reference has been made. It should not be admitted to probate.

*By the Court.*—The order and judgment appealed from are reversed, and cause remanded with instructions to vacate said order and judgment and to deny the probate of the will.