# IN THE COURT OF APPEALS OF IOWA

No. 23-0173
Filed December 20, 2023

IN THE MATTER OF THE ESTATE OF JAMES ROBERT MARTIN, Deceased.

TODD A. KERMOADE,
          Plaintiff-Appellant,

vs.

CHRISTY AINSWORTH and LESLEE SORENSEN, Executors of the ESTATE
OF JAMES ROBERT MARTIN,
          Defendants-Appellees.
_____

          Appeal from the Iowa District Court for Cass County, Craig M. Dreismeier,

Judge.


          The plaintiff in a will contest challenges the district court's grant of summary

judgment in favor of the defendant co-executors.  **AFFIRMED.**


          Robert J. Engler of Cambridge Law Firm, P.L.C., Atlantic, for appellant.

          Edward F. Noethe of McGinn, Springer & Noethe, PLC, Council Bluffs, for

appellees.


          Considered by Tabor, P.J., Buller, J., and Potterfield, S.J.*

          *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2023).

**POTTERFIELD, Senior Judge.**

Todd Kermoade petitioned to contest the will of his deceased stepfather, James Martin, claiming Martin lacked testamentary capacity when the will was executed on October 1, 2020, and that the will was the result of undue influence by Martin's daughters, co-executors Christy Ainsworth and Leslee Sorensen. The co-executors moved for summary judgment, which the district court granted. Kermoade challenges that adverse ruling on appeal; he argues there is a genuine issue of material fact regarding both of his claims so summary judgment was not proper.

**I. Background Facts and Proceedings.**

According to an affidavit filed by Kermoade, he stayed with and helped provide care for Martin for a period of time leading up to September 2020. Their relationship soured and matters came to a head in late September 2020 when the pair argued and Kermoade "got frustrated and threw a [pill] bottle at [Martin]." A few days later, at the behest of Martin and Sorensen, law enforcement told Kermoade he was not allowed to return to the home.

Martin executed a new will on October 1, 2020. Unlike with his previous will, in which Martin left Kermoade land and the "home residence," the October 2020 will split Martin's property between Ainsworth and Sorensen and left Kermoade $5000.

Martin died on April 26, 2022, and Sorensen submitted Martin's will for probate soon after. Pursuant to provisions in the will, Sorensen and Ainsworth were appointed co-executors of the estate.

Kermoade petitioned to contest the will, asserting Martin "did not have the mental ability to execute a will on October 1, 2020, and did not understand the consequences of his actions" and the will "was the result of undue influence by [Ainsworth and Sorensen], either jointly or individually."

The co-executors moved for summary judgment. They asserted Kermoade failed to raise a material issue of genuine fact as to Martin's testamentary capacity on October 1, 2020—the date Martin executed his will. Kermoade's testamentary-capacity claim seemed to rest on an allegation that Martin was dependent on hydrocodone and that one day in September 2020, Martin wanted Kermoade to give him more hydrocodone before it was time for his next prescribed dose. Kermoade was silent as to Martin's mental status on October 1. Meanwhile, the will included an attestation clause, signed by the attorney who drafted the will and another person, attesting they witnessed Martin sign the will and each "believe[d] that, at the time [Martin] executed the foregoing instrument, [Martin] was of sound mind and memory, of lawful age, and did so execute it as his own free act and deed and not under the unlawful influence of any person." Additionally, based on an affidavit provided by Martin's doctor and the accompanying medical records, Martin was seen on September 12, 2020, for a cognitive evaluation because he was "having family issues with his step-son, [Kermoade]" and wanted to change his will. Martin told Dr. Elaine Berry he wanted to change his will "so that his 2 daughters receive the actual land and property, and this his stepson will just receive money"—matching what Martin did in his October 1, 2020 will. As part of the September 12 record, Dr. Berry noted that while Martin was prescribed oxycodone to take daily, "The PMP website is checked every month for refills and

there have not been any aberrant behaviors. I have not allowed him to escalate doses. At this point he continues to meet criteria for continuing to receive narcotic prescriptions from me." Finally, the medical records from the September 12 visit show Martin scored 16/19 on the status evaluation form, which Dr. Berry later opined in her affidavit "was consistent with mental competency." Two caretakers for Martin—one who acted as his caretaker twice weekly from July 2019 until March 2022, and one who helped with home healthcare two or three days a week from July 2019 until October 2019 (a window of time following Martin's shoulder surgery)—filed affidavits stating they never saw Martin abuse hydrocodone and always thought he seemed mentally competent during their conversations and interactions with him.

The co-executors also moved for summary judgment on Kermoade's undue influence claim, pointing out that Kermoade had the burden to prove the October 1, 2020 will was "clearly brought about by undue influence," *see Burkhalter v. Burkhalter*, 841 N.W.2d 93, 101 (Iowa 2013), and needed evidence "that influence was not only present but that it was in fact exerted with respect to the making of the testament itself." *In re Estate of Davenport*, 346 N.W.2d 530, 533 (Iowa 1984). But, the co-executors argued, Kermoade had only a conclusory statement in his affidavit that Martin "was not in his right mind" and "bec[a]me unduly influenced by [the co-executor's] and Chad Birdwell, Christy's son" in support of this claim.

Kermoade resisted summary judgment, arguing there were genuine issues of material fact so summary judgment was not appropriate. He relied on medical records from visits other than the September 12, 2020 visit—the one upon which Dr. Berry relied to opine Martin was competent to change his will—showing that

the doctor questioned Martin's judgment and clarity at appointments both before and after September 12, 2020.

The district court granted the co-executor's motion for summary judgment on both of Kermoade's claims. The court started with the presumption that Martin was competent at the time he executed his October 1, 2020 will and recognized there was no evidence presented to contradict the presumption of competency at that specific date and time. Instead, Kermoade pointed the court to other time periods when Martin's competency was in question and asked the court to rely on those to rebut the presumption. The court reviewed the other medical records but noted that the reports indicating Martin was confused and had impaired memory and failing health did not reflect that Martin consistently suffered from those conditions. And reports of apparent fluctuations in judgment and clarity were similarly reflected in Kermoade's affidavit, which stated that "[t]here were days and times" Martin was confused or delusional—not that he was consistently in such a state. The court concluded Kermoade failed to generate a factual dispute about Martin's testamentary capacity at the time he executed his new will. In considering Kermoade's claim for undue influence, the court noted that other than pointing out that Ainsworth and Sorensen benefitted from the execution of the October 2020 will and their attendance at Martin's doctor appointments and meeting with the lawyer to change his will, Kermoade offered no evidence to establish Sorensen, Ainsworth, or both exerted undue influence on Martin that caused him to execute a new will.

Kermoade appeals.

**II. Standard of Review.**

"We review a grant of summary judgment for correction of errors at law." *McNeal v. Wapello Cnty.*, 985 N.W.2d 484, 490 (Iowa 2023). "Summary judgment is proper when the moving party has shown 'there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citation omitted).

**III. Discussion.**

Kermoade challenges the district court's grant of summary judgment in favor of defendants Ainsworth and Sorensen, arguing there were genuine issues for a factfinder to decide so disposing of the case through summary judgment was not appropriate.

**A. Testamentary Capacity.**

To have testamentary capacity, the testator must know and understand (1) "the nature of the instrument that is being executed"; (2) "the nature and extent of his property"; (3) "the natural objects of his bounty; and" (4) "the distribution he desires to make of his property." *Pearson v. Ossian*, 420 N.W.2d 493, 495 (Iowa Ct. App. 1988). When a party challenges a decedent's testamentary capacity, the challenger's "proof of a mental deficiency must be applicable to the time of making the will." *Id.* And "the law is slow to deny the right of anyone to dispose of his property by will as he sees fit." *Drosos v. Drosos*, 103 N.W.2d 167, 172 (Iowa 1960). "No mere impairment of his mental or physical powers, so long as he retains mind and comprehension sufficient to meet the tests above set forth, invalidates his will." *Id.* Testamentary capacity has a lower threshold than the competence needed to enter a contract. *See, e.g., Gillette v. Cable*, 79 N.W.2d

195, 198 (Iowa 1956) ("That there is a difference between competence to contract and competence to dispose of property by will is abundantly recognized in our decisions."); *Drosos*, 103 N.W.2d at 172 ("It is not essential to testamentary capacity that the maker be able to make contracts or carry on business generally.").

As he did to the district court, Kermoade focuses on the medical reports from June 2019 through March 2020 and then a report from January 2021, which include notes from Dr. Berry questioning Martin's judgment and clarity of mind. Kermoade maintains these medical reports create a genuine issue as to Martin's testamentary capacity on October 1, 2020. We disagree. As the district court noted, nothing in the doctor's notes suggest Martin's medical state was static, and Kermoade himself seemed to recognize that Martin's mental acuity fluctuated between good and bad periods. The medical note closest in time to the execution of the October 1, 2020 will was positive; Dr. Berry completed a cognitive evaluation of Martin and concluded he was competent. And both the lawyer who prepared the will and a third party signed attestation clauses indicating their belief that, at the time he executed the will, Martin "was of sound mind and memory." *See Bishop v. Scharf*, 241 N.W. 3, 7–8 (Iowa 1932) ("Mental weakness due to disease does not deprive one of testamentary capacity until it has progressed to the extent that the power of intelligent action has been destroyed. Mere forgetfulness and enfeeblement of the body are not alone sufficient to disqualify one from making a will."). While Martin may have lacked testamentary capacity at times during the final few years of his life, Kermoade has not established a genuine issue regarding Martin's testamentary capacity at the pertinent time. *See Hlubek v. Pelecky*, 701

N.W.2d 93, 96 (Iowa 2005) ("Speculation is not sufficient to generate a genuine issue of fact."); *see also Bishop*, 241 N.W. at 7 ("The important and controlling fact in the case is the condition of [the testator] at the very time the will was executed.").

Kermoade suggests that the district court wrongly placed a "very high burden" on him in order to survive summary judgment, but "[s]ummary judgment is not a dress rehearsal or practice run; 'it is the put up or shut up moment in a lawsuit, when a [nonmoving] party must show what evidence it has that would convince a trier of fact to accept its version of the events.'" *Slaughter v. Des Moines Univ. Coll. of Osteopathic Med.*, 925 N.W.2d 793, 808 (Iowa 2019) (second alteration in original) (citation omitted). The district court properly granted summary judgment for the co-executors on Kermoade's testamentary-capacity claim.

### B. Undue Influence.

Generally, to succeed on a claim of undue influence, the person challenging the will must prove: "(1) the testator was susceptible to undue influence; (2) defendants had an opportunity to exercise undue influence and effect the wrongful purpose; (3) defendants had a disposition to influence unduly to procure an improper favor; and (4) the result, reflected in the will, was clearly the effect of undue influence." *In re Est. of Bayer*, 574 N.W.2d 667, 671 (Iowa 1998). Requests or persuasion do not rise to the level of undue influence. *Cookman v. Bateman*, 231 N.W. 301, 304 (Iowa 1930). Rather, "'[u]ndue influence,' in order to vitiate the testamentary disposition of property, must be such that the party accused of undue influence must have substituted his mind or wish for that of the testator." *Id.* "In other words, it must be equivalent to moral coercion." *Id.*

"Direct proof of undue influence is not required and circumstantial evidence may be sufficient." *Bayer*, 574 N.W.2d at 671. But "more than a 'scintilla' of evidence is" needed to invalidate the will. *Id.* And "[a]n unnatural disposition of property will not of itself carry the issue of undue influence" past the summary-judgment stage. *Id.* (citation omitted). "Mere suspicion, surmise, conjecture, or speculation is not enough to warrant a finding of undue influence"; "there must be *a solid foundation of established facts upon which to rest an inference of its existence.*" *Id.* (citation omitted).

Kermoade relied on the fact that Martin's daughters were around him in the months before Kermoade and Martin's relationship soured and the new will was executed and that the new will ultimately benefitted the daughters as proof of their undue influence on the new will. This alone is not sufficient to survive summary judgment. *See In re Est. of Davenport*, 346 N.W.2d 530, 532 (Iowa 1984) ("[W]eak circumstantial evidence which at most raises the possibility of influence is not sufficient to support a finding of undue influence."). Even if the co-executors exerted some amount of influence over Kermoade, "most persons assert some influence over others, through friendship or familial duties, which may have some tangential effect on their receiving a testamentary benefit. This influence is not tainted." *Id.* (citation omitted). To show *undue* influence, Kermoade needs some evidence to show the co-executors "dominate[d] the motives of the testator in executing his will." *Id.* (citation omitted). His generalized allegations are without the specifics needed to establish undue influence. *See id.* at 533 (providing undue influence "cannot be inferred alone from opportunity, but there must be some

testimony, direct or circumstantial, to show that influence was not only present but that it was in fact exerted with respect to the making of the testament itself").

The district court properly granted summary judgment for the co-executors on Kermoade's claim of undue influence.

**IV. Conclusion.**

Because Kermoade failed to establish a genuine issue as to Martin's testamentary capacity and any undue influence on the part of the co-executors, summary judgment in favor of the defendants was proper.  We affirm.

**AFFIRMED.**